You may be seated. Our second case in the morning is Clark v. BankChampaign. For the record, BankChampaign was the trustee of the Emily C. Diffenbach Trust. My client, Ted Clark, was a beneficiary of the trust. The trust, like many trusts, provides that the share to the beneficiary as the trustee deems appropriate to provide for his health, maintenance, education, and support. The trust further provides, and this is the key language that we're here to argue about today, the trust further provides that the trustee, quote, may take any reasonable steps to disburse funds to or for a beneficiary, including, and it presents a list, but number four of that list is direct application for the benefit of the beneficiary, end quote. Several years ago, my client had both health and legal issues and, in fact, ended up going to prison. Prior to going to prison, my client incurred significant medical and legal bills. John Clark is my client's father. While my client was in prison, John Clark contacted BankChampaign and requested approximately $150,000 of my client's trust funds, claiming that he would use said funds to pay my client's doctor bills, hospital bills, prescription costs, mental health counseling. Did he submit the bills justifying the $150,000 amount that he requested? Your Honor, that's not part of the record. We haven't conducted discovery. It wasn't part of the affidavit saying he did. To my knowledge, he simply requested the money and said what he was requesting it for, not providing a list of And I suppose that goes to the point that I would make here, which is rather than asking Mr. Clark to provide documentation of the bills so that the bank, if it so chose in its discretion, could pay those creditors directly, the bank just wrote Mr. Clark to John Clark a $150,000 check. It is unknown at this time because, again, discovery hasn't been conducted what exactly John Clark did with that money. Maybe he did apply it for the benefit of my client. I do find it hard to believe that my client's debts were exactly $150,000 and that he somehow wrote all $150,000 and it's all equaled out perfectly. So maybe he applied $140,000 of it to the debt. Maybe he applied all $150,000. Maybe he applied zero. We haven't done discovery. We don't know what Mr. Clark did with the funds that he received. Of course, after getting out of prison, my client discovered... Why don't you make that argument to the trial judge that, you know, don't dismiss this case until we at least ascertain whether the $150,000 was used to satisfy Ted's debts. So that would be a reason not to dismiss it until we at least are able to clarify the answer to that question. Yes, Your Honor. We made that argument very strongly. And what did the trial court say? The trial court says, giving the money to his father, the language of the trust says, may take reasonable steps to disperse. They say, giving the money to his father was reasonable. So it's okay. Well, it's reasonable if it's used maybe to pay off the debts, the alleged debts. Well, I think there's a liability question and a damages question included there, which is, can the bank give money to a third party? I hope it uses the money for the benefit of my client. Now, the bank says, well, it was his father, so it was reasonable. With regard to whether the bank breached its fiduciary duty, that really has no relevancy. Whether it was his father, his uncle, his priest, whoever it was, they can't get somebody off the street who says, hey, I'd like money to apply it for his benefit. It's a breach of fiduciary duty to give the money to the third party. It is. Now, the question comes, did he have damages because of that breach of fiduciary duty? Well, the bank says, well, maybe there's no damages in this case. And we say, we don't know. We didn't do discovery. We at least deserve that opportunity. And again, the trial court just said, nah, what they did was reasonable. Which suggests to me that if Mr. Clark had, in fact, gone to Vegas with $150,000 and blown the money, the bank still wouldn't be on the hook for breach of fiduciary duty, which doesn't make any sense. Of course, the bank, again, breached its fiduciary duty by giving the money to Mr. Clark, or John Clark, my client's father. It's just a question of, can we do some discovery to see what the damages are in this case? And we're not there yet, and I don't even think it's a question before this court as to what potential damages might there be if discovery results in the fact that he used all $150,000 to apply to the bills. Well, what if he applied money to health care bills, and those bills didn't have any interest? And he didn't apply some of the $150,000 to, say, credit card debt, which had a very high interest. The bank, again, has improperly turned over, and that may result in damages to my client. The bank has turned over its fiduciary obligation to a third party, and it has damaged my client, he has alleged. In one way or another, and we're entitled to figure out what those damages are. I'm not suggesting that this would be determinative, but could Ted, in his affidavit, have said, these balances remain outstanding, I'm being hounded by creditors. Could he have said, somebody paid my criminal fees to my attorney for my criminal case. Could he have included facts in the affidavit that would have more closely focused the court's attention on what the money might have been used for, and whether that was even in dispute. As it stands now, are you disputing that the money was used for what might be a proper purpose, or are you just saying, well, since we don't know, is it accurate for Ted to say, I don't know. Or does he have knowledge that ought to be brought to bear and should have been included in the affidavit. To answer your Honor's question, I believe he still has debt. And so, I guess the general question is, well, he's not sure in his affidavit. Could he have gone to, I suppose he could have gone to every single potential creditor that he may have used to have and say, hey, how much do I owe you now, when did you receive a payment. Again, I think that's something we'll figure out in discovery as to, you know, sometimes medical providers after a period of time are right off the debt. So maybe he doesn't owe a debt, and maybe it's not because the money was paid. Again, I think Mr. Clark, at least, I think my client at least is entitled to due discovery to figure out exactly what happened with the $150,000. What about the releases? Right, Your Honor. Well, with regard to Section 15 of the trust, the bank is saying, well, that releases us. Section 15 of the trust specifically says, quote, upon delivery of the trust property to its successors, together with the statement of its activities for any period which has not been reported, trustees shall be without further liability or responsibility to any past, present, or future beneficiaries. The bank is asking the court to read that quite literally. In fact, if you read that provision the way the bank would have you read it, the bank could deliver the trust property to the successor, along with the statement of activities showing that it blatantly misused the money, and then it's off the hook from liability. Because what it says is, if you deliver the trust property to the successor, and a statement showing your activity, then no liability. A more reasonable reading of Section 15 would be that the trustee is relieved of liability for any actions taken by the successor trustee once you deliver the trust property and your statement of activities. It's not saying that, hot potato, here you go, here's the trust property, here's the statement of activities. Even though that statement of activities might show we did something wrong, out of our hands, no liability. So I think the bank's reading of Section 15 would be an absurd result. With regard to the letter of direction referenced by the bank that Mr. Clark signed, the Illinois case law is clear that a release will not be construed to include claims that were not within the contemplation of the parties. To quote the court in Goodman, which is a First District case from 2011, quote, no form of words, no matter how all-encompassing, will foreclose scrutiny of a release or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it accurately reflected the intention of the parties. End quote. Other cases provide that a release between a trustee and a beneficiary, like all transactions growing out of a fiduciary relationship, are subject to the closest scrutiny. And in this case, Mr. Clark says in his affidavit, I didn't have a full accounting. I hadn't received a full accounting of the trustee's activities. Therefore, any release would not be effective as to every action that the bank had done. Now, in this case, this is a letter of direction. The real purpose of this is because my client has directed the bank to transfer the funds to a successor trustee. So he thinks I'm signing this to transfer it to a successor trustee. And again, this is where discovery would be helpful. But he believes, and I believe this testimony would be further in discovery, I'm releasing them from their acts in transferring the money to the successor trustee. That's slightly different than I forgive them for anything they've ever done, which I may or may not know about. In this particular case, he was not releasing them from the actions that he didn't know about. What type of discovery did you initiate? There was no discovery, Your Honor. In this case, complaint was filed, motion to dismiss, court without even hearing grants motion to dismiss. Did that, the fact that there was a motion to dismiss filed, does that preclude you from going ahead with interrogatories, for example? I suppose it wouldn't, Your Honor. My attention would have been directed at that time toward defeating the motion to dismiss. So, in fact, I didn't move forward with the discovery at that time, but rather focused on responding to the motion to dismiss. For all the foregoing reasons, Your Honors, we would request that this court reverse the decision of the trial court and demand for further proceedings. Thank you. We'll hear from you on rebuttal. Mr. Martinkus? If it pleases the court and counsel, not only could Ted Clark have discovered what was not paid by his father, under Rule 137, he was required to. You can't file a complaint against the bank seeking punitive damages on some theory of it might have happened upon information of belief. These were his bills. He could pick up the phone and ask his lawyer, was my bill paid? He can ask his doctor, was my bill paid? He could call his credit card companies, were my bill paid? To me, the inference the court could draw here is that, in fact, these bills were all paid. That this is Mr. Clark's attempt to get back at the bank, to scam them into settling some case for a minimal amount. I don't understand at all how one can claim that there's been this breach of fiduciary duty when he doesn't even claim or allege any damages. He claims nothing with respect to these monies being taken by his father and using them for purposes unrelated to the trust. There's a long line of Illinois case law that permits trustees, within their discretion, to, in fact, make payments for the benefit of the beneficiary. Counsel quoted from the trust, it's exactly right. The trustee here had the ability, any reasonable means, to make bills either for, or directly to, or even indirectly for the benefit of the beneficiary. That was done in this case. You have a situation here where they're claiming somehow that there was a misappropriation without any facts at all. This is something they should have come and looked at prior to filing the complaint. If, in fact, they had any honest belief that my client had done anything wrong with respect to this, they could have easily investigated it. This is not a hard thing to do. This is a five-minute deal. Make some phone calls. Find out who's paid. The other thing I want to say is that this concept that the trust somehow should be interpreted not to release the bank. This is not Mr. Ted Clark's trust. This is Emily Diffenbach's trust. Maybe Emily knew her grandson. Maybe she did not want her grandson to come after the trust people, people she put her faith in to administer this trust for her grandson's benefit. The other thing is there was nothing in that trust that precluded Ted Clark, if he honestly believed there was a claim, during the trust from pursuing a claim against the bank, from asking that the bank be ordered to do something specific that he thinks is required for damages. There was nothing within the trust's powers that precluded Mr. Clark from taking actions during the interviolable period of the trust. Emily Diffenbach says, if you, in fact, get rid of this trustee, once the trustee gives the documents, if there's any unreported information, you've got to give it to the successor trustee, not to Ted, to the successor trustee and deliver the rights of the trust. These were affidavits by Mr. Claussen, uncontested, unverified, with respect to anything that Ted Clark said. We put all these in affidavits, and he never filed anything in contravention. Everything before this court, as a matter of law, is what was admitted. It's deemed admitted. The bank did, in fact, follow the protocol, did deliver the property as required, did, in fact, tell the successor trustee there was no periods of unreported income. So they've done everything required of the trust. Emily says the trust is, once it's transferred, grandson, you can't sue the bank. And then, you know, again, Ted actually signs the release. He directs the bank to do these things and transfer and then signs the release. To the extent that counsel now argues, well, wait a second, that release may not have been good, you have to avert that, you have to allege it, you have to have a counter-affidavit. If Ted honestly believed that there was some improper conduct by the bank, they had months to go ahead and put it in an affidavit, that the bank didn't explain to me what this was, that, in fact, I was pressured into signing this affidavit, that some basic reason why the court should not adhere to the terms of the release. None of that was done. So you have a situation here. What is Judge Ford going to do? You've got a trust agreement that specifically says you can apply for the best interest of this person, you can do it by direct application, indirect application, any reasonable means. You have the father here. This guy's in prison. He's verbally attacked the bank before. He's in Brazil from time to time. He's got enormous bills. His dad was the distribution advisor. I know it wasn't active at the time, but certainly someone of trust. John tells the bank earlier. I'm sorry, Ted tells the bank earlier. I'm out of this country. Send all my stuff to my dad. So the bank is being put in a position where all the information Ted requests is sent to his dad. Dad comes in and says Ted's in miserable shape. He's going to jail. He's got health. He's got credit card bills and all those things. It would be a different case if they had come before the court and said, you know what, notwithstanding all those things, we believe the bank had a greater duty to actually walk and see that these things were paid or something like that. But that's not the allegations. That's not the averments. From everything I think before you, there's nothing pled that Mr. John Clark failed to do any of these things. That's an incredibly key missing element here. You're alleging this is all speculation. Well, we might find something. Maybe there was interest paid that couldn't have been paid. It's all speculation. They have a duty under Rule 137, and I take it seriously, to investigate in a case where the investigation is quite simple. A man has control of his bills. He can make a contact to his doctor, his lawyer, his credit card company. He didn't do it. That's on him. This should be affirmed. Thank you, Mr. Martekis. Rebuttal? Thank you. I'll just try to address one quick point. Counsel argues that, and he used the word indirect, that the bank can make indirect payments under the trust. The trust says it may take any reasonable steps, including four. Direct application for the benefit of the beneficiary. So what counsel is arguing, what the bank is arguing, is what is reasonable is the direct opposite of what the trust says is reasonable. Is including, using the word including, meaning that those four scenarios are exhaustive? It doesn't, Your Honor, but it's a good indication of what is reasonable. And if direct application is reasonable, it's a pretty good indication that indirect application isn't reasonable. And I think that's, again, it just gets, counsel and I obviously view this very differently as far as it goes. It seems very strange to me that the bank could simply write a check to a third party here. And I know they're saying it's his father. If the fact that when he's in prison, he says, you know, send my mail to this address. He doesn't have any other address to send it to, so send it to this address. Or when he's in Brazil or wherever it may be, send it to that address. That makes it okay that now this guy gets to be the one who makes all of the decisions for you? He wasn't saying, hey, send my mail to this guy and let him control all of these enormous trust funds. That's not what happened. Again, Your Honor, we would request that this court reverse the decision. Thank you. We'll take the matter under advisement and await the readiness of the next case.